IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **TITLEMAX OF ALABAMA, INC.,** ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 5:20-CV-00181-CLM |
| ) | |
| **TOMMY BARNETT, JR.** and ) | |
| **JULIE BARNETT,** ) | |
| Defendants. ) | |

# MEMORANDUM OPINION

Defendants Tommy and Julie Barnett filed for Chapter 13 bankruptcy, and the bankruptcy court confirmed the Barnetts' plan. After confirmation, Appellant TitleMax of Alabama, Inc. ("TitleMax") asked the bankruptcy court to declare that the court should not have included a vehicle in the plan because TitleMax owned the vehicle thanks to a pawn default.

The bankruptcy court denied TitleMax's motion for two reasons: (1) under Alabama law, TitleMax owned only the title, not the vehicle itself, and (2) laches barred TitleMax's claim because TitleMax waited until after confirmation to claim ownership of the vehicle, despite having notice that the Barnetts included the vehicle in the plan. As explained within, the court **REVERSES** the bankruptcy court's finding that TitleMax did not own the vehicle when the Barnetts filed their petition and **REMANDS** for the court to make factual findings about waiver, rather than

laches.

## BACKGROUND

The disputed vehicle is a 1999 Dodge Ram 2500. TitleMax loaned Tommy Barnett $3,500 in exchange for the Ram's title; TitleMax allowed Barnett to keep the Ram. Barnett's loan matured on April 5, 2019, but Barnett did not repay the loan. Alabama law gave Barnett 30 more days to redeem the vehicle (*i.e.*, May 5), but he again failed to do so. *Id.* The parties agree that TitleMax owned the Ram's title once the 30-day grace period expired on May 5th. They dispute whether ownership of the Ram came with it, as TitleMax never took the Ram from Barnett.

About four weeks later (May 31, 2019), the Barnetts filed for Chapter 13 bankruptcy. In their initial plan (doc. 3-11) and their amended plan (doc. 3-15), the Barnetts listed TitleMax as a "creditor" with the Ram securing TitleMax's $4,000 claim (*i.e.*, the $3,500 loan plus a pawn charge). Doc. 3-15 at 2-3. The amended plan said that, if the court confirmed the plan, the bankruptcy trustee would pay TitleMax $234.00 per month to payoff the debt. *Id.*

The bankruptcy court notified TitleMax that it was a creditor under the plan (doc. 3-13), and TitleMax said nothing. The bankruptcy court held two hearings, and TitleMax said nothing. The bankruptcy court entered an order confirming the Barnett's amended plan on September 24, 2019 (doc. 3-19), and TitleMax said nothing. A month passed, then the bankruptcy clerk notified TitleMax that the trustee

had filed a proof of TitleMax's $4,000 claim (doc. 3-20). TitleMax still said nothing.

Finally, on December 18, 2019—201 days after the court notified TitleMax that it was an alleged creditor and 86 days after the court confirmed the Barnetts' plan—TitleMax filed a motion that asked the court to declare that the Ram was never property of the Barnett estate and was thus wrongly included in the plan (doc. 3-22).

The bankruptcy court held a hearing on the motion. The court ruled during the hearing that "[u]nder Alabama law, [only] pledge goods are forfeited under the statute, not a vehicle." Doc. 3-7 at 4. The court found that because the vehicle was not a "pledged good" under Alabama law, the Barnetts legally possessed the vehicle when they filed for bankruptcy. When TitleMax objected to the court's reading of Alabama's pawn statute, *id.* at 4-7, the court held that "the doctrine of laches" barred TitleMax's claim because TitleMax "had not taken any action, that they 'slept on their right.'"[1] *Id*. at 7. This appeal followed.

## STANDARD OF REVIEW

A district court assumes the role of an appellate court when reviewing the decision of a bankruptcy court. *See* 28 U.S.C. § 158(a). In resolving a bankruptcy appeal, the district court reviews the fact findings of the Bankruptcy Court for clear error and its legal conclusions de novo. *Coady v. D.A.N. Jt. Venture III, V.P.* (*In re*

---

[1] The transcript says that the court cited "the *Nottingham* case" to support its laches ruling, but the parties and this court believe that the court was instead referring to *In re Northington*, 876 F.3d 1302 (11th Cir. 2017).

*Coady*), 588 F.3d 1312, 1315 (11th Cir. 2009).

## ANALYSIS

TitleMax argues that when the Barnetts failed to pay off the loan after Alabama's 30-day grace period, they "forfeited all right, title and interest in and to the vehicle prior to the filling of their bankruptcy petition." Doc. 9 at 15. And because the Barnetts didn't own the Ram when they filed for bankruptcy, the bankruptcy court never had in rem jurisdiction over the Ram—meaning that the court had no power to bind TitleMax in the confirmation order and no power to rule that laches barred TitleMax from filing an objection before confirmation.

As explained below, this court agrees that TitleMax owned the Ram when the Barnetts filed their petition, so the first part of the bankruptcy's ruling is incorrect. But the court needs more facts before it can properly determine whether laches, waiver, or judicial estoppel prevent TitleMax from objecting post-confirmation.

**A. The Ram was not part of the Barnetts' bankruptcy estate.**

A bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. So the court must first determine whether the Barnetts owned the Ram when they filed their petition on May 31, 2019. State law determines property rights in bankruptcy cases, *In re Lewis*, 137 F.3d 1280, 1283 (11th Cir. 1998), so the court looks to Alabama law.

1. Alabama statutory law: The Alabama Pawnshop Act ("APA"), Ala. Code

§ 5-19A-1, *et seq*, determines the parties' respective property rights in the Ram. Under the APA, a "pawn transaction" is "any loan on the security of *pledged goods* or any purchase of *pledged goods* on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed period of time." Ala. Code § 5-19A-2(3) (emphasis added). "Pledged goods" are "[t]angible personal property other than choses in action, securities, or printed evidences of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker in connection with a pawn transaction." Ala. Code § 5-19A-2(6).

Read plainly, the Ram could only be a "pledged good" in one of three ways: (1) TitleMax "purchased" the Ram; (2) the Ram was "deposited with" TitleMax; or, (3) the Ram was "actually delivered into the possession of" TitleMax. Because TitleMax did not purchase the Ram from Barnett, the bankruptcy court read the APA to require that, for TitleMax to own the Ram post-default, the Ram must have either been "deposited with" or "actually delivered into the possession of" TitleMax. Doc. 3-7 at 4. Because only the paper title—not the truck—had been "deposited with" or "actually delivered to" TitleMax by May 31 (when the Barnetts filed their petition), the bankruptcy court held that the truck was not a "pledged good" that the Barnetts forfeited to TitleMax; only the paper title was.

This court appreciates the bankruptcy court's adherence to the statute's plain

text. But there are three problems with the bankruptcy court's ruling that TitleMax owned the truck's title but not the truck. First, the APA cannot be read to divorce title from ownership. Section 5-19A-6 of the APA says that, if the 30-day grace period runs without redemption, then "absolute right, title, and interest in and to the goods shall vest in the pawnbroker." Read plainly, "title" is not the good that the pledgor forfeits to the pawnbroker; the good is something else. Here, it is a truck.

Second, a ruling that TitleMax did not own the Ram after May 5th contradicts the parties' agreement that "if you fail to redeem the Vehicle within 30 days following the Maturity Date…then *the Vehicle* shall be forfeited to and absolute right, title, and interest in and to *the Vehicle* shall vest in the Lender." Doc. 3-23 at 3 (emphasis added). In tracking the APA's language, the parties agreed that if Barnett failed to pay off the loan by May 5, then both the paper title and the truck belonged to TitleMax, no matter when TitleMax physically took the truck.

Third, federal courts cannot read an Alabama statute differently than Alabama courts have read it—even if we disagree with their reading. And Alabama courts have read the APA in a way that contradicts the bankruptcy court's reading.

2. Alabama caselaw: This court agrees with the bankruptcy court that the problem with reading vehicle pawns into the APA is that the pawn broker doesn't possess the vehicle during the redemption period. The Alabama Supreme Court dealt with this problem in *Floyd v. Title Exch. & Pawn of Anniston, Inc.*, when it affirmed

a trial court's ruling that that APA (not the Small Loan Act) governs vehicle title pawns even though the lender does not physically possess the vehicle during the redemption period. 620 So. 2d 576, 579 (Ala. 1993). The court acknowledged that calling the paper title "tangible personal property" was "questionable," *id.* at 579, but affirmed the ruling that vehicle loans were pawn transactions under the APA, in part, "because [the pawn broker] had at least 'constructive possession' of the automobile." *Id.* at 578. Put in APA terms, the pawn broker took "constructive possession" of the vehicle, *id.*, making the vehicle a pledged good.

Later, in *Pattans Ventures, Inc. v. Williams*, 959 So. 2d 115, 121 (Ala. Civ. App. 2006), the Alabama Court of Civil Appeals decision dealt with the question posed here: when does the pawn broker own the pawned vehicle? In *Pattans*, the pawn broker took the vehicle the day after the 30-day grace period expired and promptly sold it. The pledgor sued for conversion.

On appeal, the pawn broker argued that it had the right to take the vehicle as soon as the 30-day grace period ended, while the pledgor argued that the 30-day period did not begin until the pawn broker took physical possession of the vehicle. Like the bankruptcy court here, the trial court agreed with the pledgor that physical possession mattered and thus found that the pawn broker wrongly took and sold the vehicle. The appellate court reversed because, under its reading of the APA, once the 30-day grace period ended, "[t]he pawnshop merely took possession of a vehicle

that legally belonged to it" under § 5-19A-6. *Id.* at 121-22.

3. Barnetts' Response: The state court holdings are clear: A pawn broker constructively possesses a pawned vehicle during the redemption period; then owns vehicle when the 30-day grace period ends—even if the pawn broker does not physically possess the vehicle. The Barnetts cite no Alabama case that calls these state court opinions into question.

Instead, the Barnetts cite an Eleventh Circuit opinion, *In re Rozier*, 348 F.3d 1305 (11th Cir. 2003), to say that "[u]nder Alabama law, the Debtor retained some rights in the vehicle at the time of filing, even though these rights are limited." Doc. 10 at 9. According to the Barnetts, these limited rights "open the door for the preservation of this interest through a confirmed chapter 13 plan." *Id.*

There are two problems with this argument. First, *Rozier* involves Georgia's pawn statute. As the Barnetts' entire argument hinges on Alabama and Georgia's pawn statutes being textually different, this is a fatal mistake. Second, when the Eleventh Circuit mentioned Alabama law, it spoke in a way that destroys the Barnetts' position: "This Court has held that under Florida and ***Alabama*** law ***a defaulted vehicle debtor has no ownership rights, other than a right of redemption, which is an insufficient ownership interest for that vehicle to be considered part of the debtor's bankruptcy estate***." *Id.* at 1307 (citing *In re Lewis*, 137 F.3d 1280 (11th Cir. 1998), talking about possessory rights in a vehicle). The Barnetts had no

ownership or redemption right here, so *Rozier* confirms the bankruptcy court's error.

\* \* \*

In short, TitleMax owned the Ram after May 5, 2019, so the Ram did not become part of the Barnetts' estate when they filed their petition on May 31, 2019. The court must therefore reverse the bankruptcy court's contrary ruling.

**B. The court remands for further findings on the laches ruling.**

The bankruptcy court's secondary ruling was that "the doctrine of laches" as discussed in "the *Nottingham* case" barred TitleMax from challenging the plan after confirmation. Doc. 3-7 at 7. Having read the briefs and argument transcript below, this court believes the bankruptcy court meant that TitleMax had *waived* its ability to challenge the confirmed plan based on the Eleventh Circuit opinion, *In re Northington*, 876 F.3d 1302 (11th Cir. 2017).

But waiver has taken different forms in Alabama's bankruptcy courts since *Northington*. The standard rationale—and the one that the bankruptcy court seems to have applied here—is that a pawn broker waives its right to challenge a confirmed plan if the pawn broker had notice that the plan listed it as a creditor and the pawn broker said nothing. But (at least) two other waiver rationales have been applied in cases virtually identical to this one.

First, shortly after deciding this case, the bankruptcy court found in a similar case that TitleMax had waived its post-confirmation objection, in part, because it

accepted three payments before moving to confirm termination or absence of stay. *See In re: Cottingham*, 618 B.R. 555, 565 (Bankr. N.D. Ala. May 4, 2020). That may or may not be true here, as this record does not show if TitleMax accepted any plan payments. The amended plan leaves blank the date of TitleMax's first fixed payment. Doc. 3-15 at 3. The record reveals a 49-day gap between the clerk notifying TitleMax that the trustee had filed a proof of TitleMax's $4,000 claim (doc. 3-20) and TitleMax filing its motion (doc. 3-22) but does not reveal whether any checks were mailed or accepted during this 7-week window.

Second, the bankruptcy court has said that TitleMax may waive its objection (or be estopped from asserting it) by taking inconsistent positions. The court noted in *Cottingham* that, five times in 2020 alone, TitleMax had accepted "secured creditor" status even though the 30-day grace period ended before confirmation. *See Cottingham, supra* at 560, n.8. TitleMax has similarly accepted "secured creditor" status in the Bankruptcy Court for the Southern District of Alabama at least nine times since 2019. *See In re: Deakle*, 617 B.R. 709, 713 n.3 (Bankr. S.D. Ala. June 24, 2020). In fact, the *Deakle* court noted that TitleMax sometimes affirmatively argues that it can waive the forfeiture, *id.* at 712, which goes against its present argument that forfeiture is automatic and jurisdictional. As the Southern District court put it, "forfeiture is either waivable or it isn't . . . [t]he court refuses to let TitleMax have its cake and eat it too." *Id.* at 714.

Because the record here is unclear, the court remands the case so that the bankruptcy court can clarify which legal doctrine(s) apply in this case and make any factual findings necessary to apply that doctrine(s).

## CONCLUSION

For the reasons stated above, the courts **REVERSES** the bankruptcy court's decision below and **REMANDS** for further proceedings consistent with this opinion.

**DONE** this 8th day of February 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE